USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/12/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONNELL BRIDGES,

      Plaintiff,

 -against-

THE STATE OF NEW YORK CORRECTIONAL SERVICES *and the employees that are named in this civil action, the Department of Medical services;* DR. JANIS; THOMAS GRIFFIN; ARCL. KOENIGSMANN; DR. F. BERNSTEIN; DR. Y. KOROBOVA; R. BENTIVEGNA, M.D.; E. PAGAN; N.A. DAWN OSSELMANN; MONTEFIORE MOUNT VERNON HOSPITAL; DR. PENNSYLVANIA,

      Defendants,

No. 17 cv 2220 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

  *Pro se* Plaintiff Donnell Bridges ("Plaintiff" or "Bridges") commenced the instant action against Defendants New York State Department of Corrections and Community Supervision ("DOCCS"), Dr. Janis, Superintendent Thomas Griffin ("Supt. Griffin"), Arcl. Koenigsmann (" Dr. Koenigsmann"), Dr. F. Bernstein ("Dr. Bernstein"), Dr. Y. Korobova ("Dr. Korobova"), R. Bentivegna ("Bentivegna"), E. Pagan ("Pagan"), N. A. Dawn Osselmann ("Osselmann"), Dr. Pennsylvania, and Montefiore Mount Vernon Hospital ("Mt. Vernon Hospital") seeking relief for alleged constitutional violations pursuant 42 U.S.C. § 1983 ("Section 1983") and violations of the Americans with Disabilities Act ("ADA"). ("Complaint," ECF No. 2.) Presently before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") on the basis that Plaintiff has failed to assert a claim upon which relief may be granted. (ECF Nos. 73 & 79.) For the reasons discussed below, Defendants' motion is GRANTED.

## BACKGROUND

  The facts below are derived from a liberal interpretation of Plaintiff's asserted allegations and matters of which the Court may take judicial notice, and are accepted as true for the purpose of this

motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

Plaintiff's thirty-two (32) page Complaint contains mostly conclusory statements, citations to case law, and pronouncements of various legal principles. The factual allegations are sparsely scattered throughout the document. As best can be deciphered, Plaintiff attempts to assert violations of the Eighth and Fourteenth Amendments of the U.S. Constitution and a claim of medical malpractice.

Plaintiff is an inmate at Green Haven Correctional Facility ("Green Haven"). Though Plaintiff does not affirmatively state that he suffers from prostrate cancer, it is reasonably inferred from the allegations. Plaintiff's alleged claims derive from three medical procedures. The first two medical procedures were performed at the Mt. Vernon Hospital. The last medical procedure was performed at Memorial Sloan Kettering Cancer Center ("MSKCC").[1] Plaintiff alleges that the medical staff at Green Haven and his treating physicians failed to provide adequate medical care and displayed callous deliberate indifference to his medical needs. Plaintiff alleges that, at the time of the alleged incident(s), the individual defendants were acting under color of state law.

On March 19, 2014, Plaintiff was experiencing pain in his groin area and met with Pagan, a physician's assistant at Green Haven. Pagan arranged for Plaintiff to be seen by Dr. Janis at the Mt. Vernon Hospital. Upon arrival to the hospital, Plaintiff was rushed into the operating room where Dr. Janis performed a biopsy[2] to determine whether Plaintiff had prostate cancer and whether the cancer had spread. Soon after anesthesia was administered and the procedure began, Plaintiff was awakened by severe pain as Dr. Janis "cut into plaintiff['s] Urinary-Bladder." The pain caused Plaintiff to sit "straight []up on the operation table." Plaintiff overheard Dr. Janis state, "Whoop, I Made a Mistake, and I took and cut the wrong-thing." Plaintiff was given more anesthesia so that the procedure could be completed.

---

[1] MSKCC is a cancer treatment hospital.

[2] A biopsy is a medical procedure to remove tissue from a patient's body to examine it for disease.

Plaintiff asserts that Dr. Janis mistakenly cut in the "[Vas;Defenes] that is connected to the [Seminal 'Vesicle] that is connection to the [EJaculatory] that hold the [Eperm-count] in the Male-Seminal-Fluid] so that the Male 'can have a Sexual 'Intercourse" [sic]. Plaintiff asserts that such injury will deprive him of "Sexual Function" and result in erectile dysfunction, sterilization, and an inability to achieve an erection without the use of medication such as Viagra. At the time of the procedure, Dr. Janis appeared to be extremely tired. Plaintiff asserts that Dr. Janis' conduct amounts to a deliberate indifference to his medical needs because the doctor displayed a total lack of care.

Plaintiff alleges that Dr. Janis' conduct during the biopsy amounts to medical malpractice because he was owed a duty of care, the doctor breached the duty of care, the doctor's breach was the proximate cause or a substantial factor in bringing about Plaintiff's injuries, and Plaintiff suffered harm as a direct result of the doctor's lack of care. Plaintiff also asserts that Dr. Janis did not take sufficient care to ensure the surgical procedure was performed successfully. Plaintiff avers that Dr. Janis' conduct, along with the other (unidentified) defendants, was intentional and reckless. Plaintiff asserts that the City of Mt. Vernon is vicariously liable for the actions of Dr. Janis as the "owner" of the hospital and its negligent hire of the doctor.

Next, on July 10, 2014, Plaintiff went to the bathroom, noticed blood in his urine and stool, and requested to see a doctor. Plaintiff was seen by Dr. Pennsylvania, a doctor at Green Haven, who informed him that he needed to be examined by Dr. Bernstein. Despite this recommendation, thirty-nine (39) days passed before Plaintiff was examined by Dr. Bernstein. During the intervening days, Plaintiff remained housed in the Special Housing Unit ("SHU"), continued to have blood in his urine and stool, and suffered pain. Plaintiff alleges that the long delay in being examined by Dr. Bernstein amounts to deliberate and callous negligence. Notably, Plaintiff also contradicts himself and asserts that on July 10, 2014, he was taken to the Mt. Vernon Hospital for treatment and Dr. Janis purportedly inserted a catheter into his penis.

On August 18, 2014, Plaintiff was admitted and treated at Mt. Vernon Hospital. On August 20, 2014, an unnamed doctor with a Jamaican accent performed a colostomy, a surgical procedure where the large intestine is brought out through the abdominal wall and typically attached to a pouch or bag. Plaintiff was released from the hospital on August 21, 2014. Upon his return to Green Haven, he was placed in the infirmary and later returned to the general population. The colostomy bag purportedly remains in place to date.

On September 9, 2014, Plaintiff was admitted to MSKCC for surgery to remove his prostrate. Plaintiff alleges the surgery was necessary to correct the errors committed by Dr. Janis during the biopsy procedure. Following surgery, Plaintiff had to wear diapers, was and is required to have medical treatment for his condition (presumably cancer) once a month at MSKCC, and has been unable to perform sexually. Plaintiff's allegations suggest that Dr. Korobova was his primary medical care provider at MSKCC.

On an unspecified date, Plaintiff was treated at MSKCC for the purpose of having his catheter replaced. Plaintiff was examined by Dr. Levitt (or, possibly, Dr. Leddy) who informed Plaintiff that he had a "really bad Yeast' Infection." Dr. Levitt communicated to Plaintiff that Dr. Korobova would order antibiotics for Plaintiff. When Plaintiff returned to Green Haven, his medical records failed to indicate that he was prescribed antibiotics. Although Plaintiff saw Dr. Korobova prior to returning to the correctional facility, the only instruction given by Dr. Korobova was that Plaintiff was to drink plenty of water in order to cure the infection.  Plaintiff further asserts that he was examined by Dr. Korobova on two subsequent occasions, and, during that time, requested a "Walking-cane" (walking stick or cane) and a new pair of medical boots. Dr. Korobova denied Plaintiff's requests, allegedly remarking, "Mr. Bridges, this is not Burger King... you can't have it your way." Plaintiff alleges that this amounts to deliberate indifference.

Plaintiff asserts that after his surgery at MSKCC, he returned to Green Haven. While at Green Haven, Plaintiff experienced blood in his urine due to his medical condition. On September 27, 2014, an unidentified correctional officer filed a misbehavior report against him for "dirty-urinary." As a result of the misbehavior report, Plaintiff was disciplined by being placed in SHU.

Plaintiff asserts that Pagan frequently examined Plaintiff while at Green Haven. Pagan was responsible for determining that a consult with a specialist was necessary and for referring Plaintiff to Dr. Janis. Based on Pagan's examinations, determinations that a consult was necessary, his referral to Dr. Janis, and the inadequate medical care received from Dr. Janis, Plaintiff suggest that Pagan was deliberately indifferent to his medical needs.

Plaintiff also attempts to assert separate claims as against Osselmann and Supt. Griffin for violating the ADA. Plaintiff maintains that, as a cancer survivor, he is a person with a disability. He alleges that he requested and was denied access to the U.P.D. by Supt. Griffin. Plaintiff fails to allege what the U.P.D. is and what, if any, qualifications exist.[3] Notably, Plaintiff asserts that Supt. Griffin was aware of his medical condition and failed to take proper steps to ensure he received proper care. Other than to reference Osselmann, Plaintiff makes no other allegation concerning an alleged ADA violation. Lastly, Plaintiff filed two inmate grievances concerning his inadequate medical care, which were appealed and subsequently denied by Supt. Griffin.

Plaintiff attempts to assert claims against Dr. Koenigsmann, the director of Green Haven's medical department. Plaintiff asserts he wrote two letters to Dr. Koenigsmann, one in March 2014 and the other in June 2016, concerning his overall medical treatment. Plaintiff alleges that despite receiving

---

[3] Defense counsel explains that the U.P.D. unit is reserved for inmate patients that require 24-hour nursing care. Plaintiff does not allege that his illness required 24-hour nurse care.

5

notice of Plaintiff's inadequate medical treatment, Dr. Koenigsmann did nothing to remedy the situation.[4] Plaintiff alleges he exhausted his administrative remedies.

## LEGAL STANDARD

**RULE 12(b)(6)**

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge their claim from conceivable to plausible." *Twombly*, 550 U.S. at 555. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal allegations couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of the complaint . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79.

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45-45 (1957)). This "is particularly so when the *pro se* plaintiff alleges that his civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they

---

[4] Plaintiff attaches two letters which he wrote to Dr. Koenigsmann, dated September 15, 2015 and June 30, 2016. In the letters, Plaintiff states that he wrote to Dr. Bentivegna in September 2016 to express his dissatisfaction with the treatment he received from Dr. Korobova and requested a new doctor. According to Plaintiff, he purportedly asked Dr. Korobova to prescribe him a walking cane and medical boots, which were not provided. Plaintiff also alleges that due to the colostomy and catheter, Dr. Bentivegna indicated that his condition required the issuance of "a medical shower and feed in the cell" permit. Plaintiff allegedly made a similar request to Dr. Bernstein.

6

suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

**SECTION 1983**

Section 1983 provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Paterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York,* No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 529 F.3d 121, 127 (2d Cir. 2010). Therefore, there are two elements to a Section 1983 claim: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d. Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347,354 (E.D.N.Y. 1999) (noting that Section 1983 "furnished a cause of action for violation of federal rights created by the Constitution") (citation omitted).

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138-39 (2d Cir. 2013). Instead, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir.) (emphasis

added) (internal quotation marks omitted), *cert. denied sub nom., Brooks v. Pataki*, 137 S. Ct. 380 (2016). As the Second Circuit has explained, the personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

## DISCUSSION

**EIGHTH AMENDMENT**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Consequently, the government is obligated to provide adequate medical care to incarcerated people, such that the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under Section 1983. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). To state a claim of medical indifference, a inmate must show that (1) he or she had an objectively serious medical need, and (2) a defendant acted with subjective deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136-38 (2d Cir. 2000). The defendant must have actual notice of the prisoner's serious medical need. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986). In other words, the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he defendant's belief that his conduct poses no serious harm . . . need not be sound as long as it is sincere." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006).

There are various limits to a deliberate indifference claim. "[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Instead, to be a constitutional violation, the act or omission must result in a "condition of urgency" that may result in "degeneration" or "extreme pain." *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Koehl,* 85 F.3d at 88 (holding the court incorrectly dismissed the plaintiff's claim on a 12(b)(6) motion when plaintiff alleged he was deprived of his medically needed eye glasses resulting in a significant loss of vision); *Lowrance v. Coughlin*, 862 F. Supp 1090, 1116 (S.D.N.Y. 1994) (finding that plaintiff was deprived of medical care when his knee surgery was delayed due to various retaliatory prison transfers, causing pain and suffering). Thus, for example, if a prison official deliberately ignores a gash on a prisoner's face that is becoming infected, an omission of treatment could violate the Eighth Amendment; however, the failure to provide cosmetic surgery when a prisoner nicks himself shaving would not. *Chance*, 143 F.3d at 702.

An inadvertent failure to provide adequate medical care also fails to rise to the level of deliberate indifference. See *Estelle*, at 105–06. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703 (internal citations omitted).

Here, Plaintiff's allegations fall short of the requisite Rule 12(b)(6) standard. Plaintiff's claim(s) for alleged deliberate indifference to his medical needs are asserted in conclusory fashion and lack factual particularity to support each of the essential elements of the claim. Plaintiff has failed, *inter alia*, to sufficiently assert that the medical professionals and government employees acted with the requisite culpable state of mind necessary to establish subjective deliberate indifference. A mere recitation of the standard does not suffice. Accordingly, to the extent Plaintiff seeks to assert claims for deliberate

indifference as against Pagan, Dr. Janis,[5] Dr. Bentivegna, Dr. Bernstein, Dr. Korobova, Dr. Koenigsmann, Dr. Pennsylvania, Osselmann, and Supt. Griffin, in their individual capacity, they must be dismissed, without prejudice.

Conversely, Plaintiff's claims for deliberate indifference to his medical needs as against Pagan, Dr. Janis[6], Dr Bentivegna, Dr. Bernstein, Dr. Korobova, Dr. Koenigsmann, Dr. Pennsylvania, Osselmann, and Supt. Griffin in their official capacity are dismissed with prejudice. It is well settled that Section 1983 imposes liability for conduct that subjects a plaintiff to a deprivation of a right secured by the Constitution. *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). A suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). To that end, the Eleventh Amendment deprives federal courts of the authority to entertain damages actions asserted against a State "absent [a] waiver or valid abrogation" of state sovereign immunity. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011); *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015). As such, the official is entitled to invoke Eleventh Amendment immunity belonging to the state and its instrumentalities, such as DOCCS. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985); *see also Johnson v. New York*, No. 10 Civ. 9532(DLC), 2012 WL 335683, at *1 (S.D.N.Y. Feb. 1, 2012) ("DOCCS is an arm of the state."). As such, here, to the extent Plaintiff seeks to assert such a claim against DOCCS by asserting official capacity claims against defendants, that claim fails.

---

[5]As noted below, the claim for deliberate indifference to Plaintiff's medical needs against Dr. Janis in his individual capacity, is dismissed with prejudice as time barred.

[6]While providing treatment to Plaintiff, an inmate at Green Haven, Dr. Janis acting as a state actor. A private actor who willing participates in joint activity with the State or its agents, is "controlled by an agency of the State, and has been delegated a public function by the state, is deemed a state actor pursuant to 42 U.S.C. § 1983. See *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 313 (2d Cir. 2003) (citing *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

**MEDICAL MALPRACTICE**

Liberally interpreted, Plaintiff's allegations as against Dr. Janis sound more akin to a medical malpractice claim. In New York, a negligent act or omission "that constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician constitutes malpractice." *B.F. v. Reprod. Med. Assocs. of New York, LLP*, 136 A.D.3d 73, 80 (1st Dep' t 2015); *Scott v. Uljanov*, 74 N.Y.2d 673, 674 (1989) ("[M]edical malpractice is simply a form of negligence, [and] no rigid analytical line separates the two"). The method for distinguishing between situations of "simple negligence" and "the more particularized medical malpractice standard" has been described as follows:

> negligence rules are applicable in those situations where the issue relating to the exercise of due care may be 'easily discernible by a jury on common knowledge'[;] . . . [but] where the directions given or treatment received by a patient is in issue, this requires consideration of the professional skill and knowledge of the practitioner or the medical facility and the more specialized theory of medical malpractice applies.

*Coursen v. New York Hosp.-Cornell Med. Ctr.*, 114 A.D.2d 254, 256 (1st Dep't 1986) (citations omitted).

The elements of a cause of action for negligence are: (1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of the duty; and (3) an injury to the plaintiff as a result of the breach of the duty. *Merino v. N.Y.C. Transit Auth*., 218 A.D.2d 451 (1st Dep't 1996); *Ingrassia v. Lividikos*, 54 A.D.3d 721, 724 (2nd Dep't 2008). Thus, to assert valid medical malpractice claim against a physician, a plaintiff must assert that the physician deviated or departed from accepted community standards of practice and that such departure was a proximate cause of the plaintiff's injuries. *See Gross v. Friedman,* 73 N.Y.2d 721, 722–723 (1988).

In New York, the statute of limitations for medical malpractice is two and a half years and runs from the date of the alleged negligent act or omission that caused the patient's injury. N.Y. C.P.L.R. § 214-a. The limitations period may be extended beyond the two and a half year period under the continuous treatment doctrine, in which case the period begins to run as of the date of the last treatment.

11

*Id.*; *Borgia v. City of New York*, 12 N.Y.2d 151, 156 (1962). To invoke the doctrine, a plaintiff must establish a continuous course of treatment with a particular health care provider with respect to the condition that gives rise to malpractice action. *Rudolph v. Jerry Lynn, D.D.S., P.C.*, 16 A.D.3d 261, 262 (2005).

Here, Plaintiff alleges that he was treated by Dr. Janis at the Mt. Vernon Hospital on March 14, 2014. While performing a biopsy, Plaintiff alleges Dr. Janis improperly administered anesthesia and made an improper incision. Plaintiff does not reference any other treatment or course of treatment by Dr. Janis thereafter. Plaintiff commenced this action on March 27, 2017, more than three years after the alleged medical malpractice. Such time period is beyond the two and a half year statute of limitations time period. Accordingly, any malpractice claim against Dr. Janis and Mt. Vernon Hospital must be dismissed with prejudice as time barred.[7]

Plaintiff's allegations against Dr. Korobova, interpreted liberally, also suggest a claim for medical malpractice. Such claim, however, fails. Plaintiff's allegations indicate that Dr. Korobova differed with Dr. Levitt's (a.k.a. Dr. Leddy) proposed course of treatment for a yeast infection and declined Plaintiff's request for a walking cane and medical boots. A previously discussed, to assert valid medical malpractice claim against a physician, a plaintiff must establish that the physician deviated or departed from accepted community standards of practice and that such departure was a proximate cause of the plaintiff's injuries. *Gross*, 73 N.Y.2d at 722–23. Lacking from Plaintiff's complaint are factual allegations that Dr. Korobova's proposed course of treatment for the yeast infection was a departure from accepted medical standards of practice. Plaintiff further fails to allege the nature of the injuries purportedly suffered from

---

[7] To the extent Plaintiff has attempted to assert malpractice claims against any of the named defendants which accrued beyond the two and one half year statute of limitations, said claims are likewise time barred.

the failure to prescribe the antibiotics. Lastly, Plaintiff's mere request for a cane and medical boots, absent a medical need (which is not alleged) does not amount to a claim for medical malpractice.[8]

**FOURTEENTH AMENDMENT**

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire,* 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). But, even if a plaintiff succeeds in initially pleading a due process claim, such claim may nonetheless be dismissed, under certain conditions, if the due process violation was subsequently cured.

Regarding the first prong, an inmate's liberty interest may be implicated by SHU or keeplock confinement "only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis v. Barrett,* 576 F.3d 129, 133 (2d Cir. 2009) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). To determine whether the plaintiff endured an "atypical and significant hardship," courts consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions," as well as the duration of the segregated confinement. *Davis,* 576 F.3d at 133. Although the Second Circuit has declined to establish bright-line rules in this area, it has explicitly noted that "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions" or "a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004).

---

[8] Plaintiff fails to assert that the failure to provide a cane and medical boots were a departure from accepted medical practice. Significantly, Plaintiff does not associate the cane and boots to an illness.

13

Plaintiff's due process claim is predicated on a misbehavior report filed by an unidentified correctional officer for having dirty urine. Plaintiff attributes his dirty urine to his cancer illness and not to an impermissible activity. Plaintiff's allegation are void of any facts concerning the disciplinary hearing process, if any, and the length of his confinement to the SHU. Notably, Plaintiff does not describe the conditions of the keeplock confinement and how said conditions were atypical and constitute significant hardship on him, as an inmate, in relation to the ordinary incidents of prison life. Accordingly, Plaintiff's Fourteenth Amendment due process claim is dismissed, without prejudice.

**ADA CLAIM**

Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) (2000); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). To establish a prima facie claim under the ADA, a plaintiff must allege that: "(1) that he is a 'qualified individual' with a disability; (2) that the defendants are subject to the ADA; and (3) that the plaintiff was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [his] disabilit[y].'" *Andino v. Fischer*, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010) (citing *Henrietta D. v. Bloomberg*, 331 F.3d at 272; *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)). The relevant inquiry is whether the disabled individual has to access benefits to which he or she is legally entitled to receive. *See Bloomberg*, 331 F.3d at 273 (2d Cir. 2003) (citing *Alexander v. Choate*, 469 U.S. 287, 301 (1985)).

As an initial matter, Plaintiff's ADA claim against Osselmann is asserted in conclusory fashion, warranting dismissal. Plaintiff's ADA claim against Supt. Griffin is similarly subject to dismissal.

Plaintiff's ADA claim is predicated upon the denial of his request to be assigned to the U.P.D., a medical care unit for sick inmates which require twenty-four nursing care. It is undisputed that Plaintiff is disabled. However, Plaintiff's claim fails for several reasons. In its most basic form, Plaintiff's ADA claim concerns the quality and quantity of the medical care he received and is not one of discrimination. "Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not alege that the inmate was treated differently because of his or her disability." *Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (internal citations omitted). Moreover, Plaintiff failed to assert or demonstrate he was "entitled to receive" the benefit(s) he sought to receive. *Id.* Lastly, for purposes of the ADA, the term public entity is defined as any State or local government, any department, agency, special purpose district, or other instrumentality of a State or States or local government, or the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49). *See* 42 U.S.C.A. § 12131. Plaintiff's claim is asserted as against Supt. Griffin and Osselmann, two individuals. Accordingly, the ADA claims must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motions are GRANTED as follows: (1) Plaintiff's claim for deliberate indifference to his medical needs as against Pagan, Dr. Janis, Dr Bentivegna, Dr. Bernstein, Dr. Korobova, Dr. Koenigsmann, Dr. Pennsylvania, Osselmann, and Supt. Griffin, in their official capacity, as well as DOCCS, is dismissed with prejudice; (2) Plaintiff's claim for deliberate indifference to his medical needs as against Pagan, Dr. Janis, Dr Bentivegna, Dr. Bernstein, Dr. Korobova, Dr. Koenigsmann, Dr. Pennsylvania, Osselmann, and Supt. Griffin, in their individual capacity, is dismissed without prejudice to renew; (3) Plaintiff's medical malpractice claim against Dr. Janis and Mt. Vernon Hospital is dismissed with prejudice; (4) Plaintiff's medical malpractice claim against Dr. Korobova is dismissed without prejudice; (5) Plaintiff's Fourteenth Amendment claim is dismissed without prejudice; and (6) Plaintiff's ADA claim against Supt. Griffin and Osselman is dismissed with prejudice.

Plaintiff shall have until July 15, 2020 to file an amended complaint consistent with this Opinion and Order. Failure to timely comply may result in the dismissal, with prejudice, of all claims asserted.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 73 & 79. Defendants are directed to mail a copy of this Opinion and Order to Plaintiff at his address listed on the docket, and to file proof of service.

Dated:   May 12, 2020
           White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge