UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____          │
│ DATE FILED: 5/12/2022           │
└─────────────────────────────────┘
```

DONNELL BRIDGES,

                    Plaintiff,

    -against-

THE STATE OF NEW YORK CORRECTIONAL
SERVICES; DR. JANIS; THOMAS GRIFFIN;
ARCL. KOENIGSMANN; DR. F. BERNSTEIN;
DR. Y. KOROBOVA; R. BENTIVEGNA, M.D.; E.
PAGAN; N.A. DAWN OSSELMANN;
MONTEFIORE MOUNT VERNON HOSPITAL;
and DR. PENNSYLVANIA,

                    Defendants.

No. 17-CV-2220 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Donnell Bridges ("Plaintiff"), proceeding *pro se*, commenced the instant action against Defendants New York State Department of Corrections and Community Supervision ("DOCCS"), Dr. Marc Janis ("Dr. Janis"), Superintendent Thomas Griffin ("Supt. Griffin"); Dr. Carl J. Koenigsmann (s/h/a Dr. Arcl Koenigmann) ("Dr. Koenigsmann"); Dr. Frederick Bernstein ("Dr. Bernstein"), Dr. Yelena Korobkova (s/h/a Dr. Korobova) ("Dr. Korobkova"), Dr. Robert Bentivegna (s/h/a Dr. Pennsylvania[1]) ("Dr. Bentivegna"), Physician Assistant Enrique Pagan ("Pagan"), Nurse Administrator Dawn Osselmann ("Osselmann"), and Montefiore Mount Vernon Hospital ("MMVH") seeking relief for alleged constitutional violations pursuant to 42 U.S.C. § 1983 ("Section 1983") and violations of the Americans with Disabilities Act ("ADA"). (ECF No. 2.)

---

[1] Although Plaintiff commenced the action listing Dr. Robert Bentivegna and Dr. Pennsylvania as two separate defendants, Plaintiff has clarified in the Second Amended Complaint that these names refer to the same person. (SAC ¶¶ 9, 17, 51, 60.)

1

Presently before the Court are defendants' two motions to dismiss Plaintiff's Second Amended Complaint. (ECF Nos. 61.) For the following reasons, the motions to dismiss are granted.

## BACKGROUND

The following facts are derived from a liberal interpretation of Plaintiff's allegations in his Second Amended Complaint ("SAC," ECF No. 99) and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F. 3d 220, 230 (2d Cir. 2016).

Plaintiff is an inmate at Green Haven Correctional Facility ("Green Haven"). Plaintiff alleges the medical staff at Green Haven and his treating physicians failed to provide adequate medical care and displayed callous deliberate indifference to his medical needs. Plaintiff alleges the individual defendants were acting under color of state law at the time of the alleged events.

### I.    Biopsy By Dr. Janis

On March 19, 2014 or April 16, 2014,[2] Plaintiff was experiencing pain in his groin area and met with Defendant Enrique Pagan, a physician's assistant at Green Haven. (SAC ¶ 3.) Pagan arranged for Plaintiff to be seen by Defendant Dr. Marc Janis at Montefiore Mount Vernon Hospital for a biopsy examination to determine if Plaintiff had prostate cancer and whether such cancer had spread to other organs. (*Id.* ¶¶ 3–4.) Upon arrival to the hospital, Plaintiff was taken into the operating room for the biopsy. (*Id.* ¶ 5.) Soon after anesthesia was administered and the procedure had begun, Plaintiff woke up to severe and excruciating pain. (*Id.*) Plaintiff overheard Dr. Janis say that he had cut into Plaintiff's urinary bladder. (*Id.*) The pain caused Plaintiff to "sit-up-right-straight on the operation table." (*Id.* ¶ 6.) Plaintiff overheard Dr. Janis state, "Whoop

---

[2] The Second Amended Complaint refers to the same biopsy procedure that took place with two different dates – March 19, 2014 (SAC ¶¶ 3, 4) and April 16, 2014 (*id.* ¶¶ 24, 25, 27).

I Made A Mistake," and tell his medical assistant to hurry up and put Plaintiff back under "because he did cut the wrong thing." (*Id.*) Plaintiff alleges that Dr. Janis acted with deliberate indifference and negligence in conducting the biopsy. (*Id.* ¶ 50.) Plaintiff also asserts Pagan refused to send him to see outside medical specialists, which contributed to Plaintiff's injury from the biopsy. (*Id.* ¶¶ 26–27.)

Plaintiff alleges Defendant Montefiore Mount Vernon Hospital employed Dr. Janis as one of its medical employees. (*Id.* ¶ 37.) Plaintiff asserts MMVH should be indemnified for Dr. Janis' damages because the hospital had a medical contract with Dr. Janis. (*Id.* ¶ 38.) Plaintiff asserts Dr. Janis is a private physician who also had a contract with the state of New York to provide medical services to inmates at Green Haven on a part-time basis. (*Id.* ¶ 44.) Plaintiff asserts that Dr. Janis abused his medical position while acting in his official capacity under his contract with the state of New York. (*Id.* ¶ 45.)

## II. Delay In Examination By Dr. Bernstein

On July 10, 2014, Plaintiff went to the bathroom, noticed blood in his urine and stool, and requested to see a doctor. (*Id.* ¶ 9.) Plaintiff was seen by Defendant Dr. Robert Bentivegna, a doctor at Green Haven, who informed him that he needed to be examined by Defendant Dr. Frederick Bernstein. (*Id.* ¶¶ 9–10.) Despite the referral, thirty-nine days passed before Plaintiff was examined by Dr. Bernstein. (*Id.* ¶ 10.) Plaintiff suffered pains and mental anguish as a result of the delay in medical treatment, not knowing the cause of his symptoms, and not knowing whether there was a rupture in the sutures from the biopsy procedure. (*See id.* ¶¶ 11–12.) Plaintiff seeks to hold both Dr. Bernstein and Dr. Bentivegna are liable for the delay in treatment. (*Id.* ¶ 17.)

### III. Treatment by Dr. Korobkova

On an unspecified date, Plaintiff was treated at Memorial Sloan Kettering Cancer Center by Dr. Levitt, who issued a medical order for Defendant Dr. Yelena Korobkova to provide antibiotics to treat a yeast infection. (*Id.* ¶ 18.) When Plaintiff returned to Green Haven, Dr. Korobkova did not prescribe any antibiotics and only told Plaintiff that he needed to drink plenty of water to treat the yeast infection. (*Id.* ¶ 20.) Furthermore, Plaintiff asked Dr. Korobkova for a walking cane and for "a new pair of medical-boots." (*Id.* ¶ 21.) Dr. Korobkova rejected such requests and told Plaintiff "[t]his is prison's [sic] Mr: Bridges, not Burger King, you cannot have it your way." (*Id.*) Plaintiff alleges Dr. Korobkova contributed to the injury he sustained from April 16, 2014. (*Id.* ¶ 24.)

### IV. Allegations Against Dr. Koenigsmann

On July 30, 2016, Plaintiff "again wrote" to the Chief Medical Director of Green Haven, Dr. Carl J. Koenigsmann, concerning his overall treatment. (*Id.* ¶ 30.) Plaintiff complained in his letter regarding the Green Haven medical staff's medical treatment and standard of care. (*Id.*) Defendant Dr. Koenigsmann referred the matter to a subordinate, who took no corrective actions. (*Id.*) Plaintiff alleges Dr. Koenigsmann contributed to Plaintiff's injury suffered from Dr. Janis's procedure on April 16, 2015. (*Id.* ¶ 32.)

### V. Allegations Against Osselmann and Supt. Griffin

Plaintiff alleges Defendant Nurse Administrator Dawn Osselmann denied him participation in the UPD[3] housing program at Green Haven. (*Id.* ¶ 33.) Plaintiff asserts that Defendant Superintendent Thomas Griffin stated that Plaintiff did not qualify as somebody who has a medical disability under the ADA, even though Plaintiff suffers from prostate cancer. (*Id.*)

---

[3] UPD stands for Unit for the Physically Disabled at Green Haven, devoted to inmates who require 24-hour nursing care. (ECF No. 118 at 8, 17.)

Plaintiff also claims Osselmann refused to follow Pagan's order and that she participated and contributed to Plaintiff's injury incurred on April 16, 2014. (*Id.* ¶ 36.)

### VI. Relief Requested

Plaintiff alleges he suffers ejaculation issues and has erective disfunction for the rest of his lifetime as a result of the biopsy. (*Id.* ¶ 52.) Plaintiff seeks $150 million[4] in damages for pain and suffering caused by the alleged defective and negligent biopsy procedure by Dr. Janis. (*Id.* ¶ 55.) Specifically, Plaintiff seeks $20 million from Dr. Janis, $20 million from Dr. Koenigsmann in his individual capacity, $10 million from Dr. Griffin in his individual capacity, $10 million from Dr. Bernstein in his individual capacity, $10 million from Dr. Bentivegna in his individual capacity, $10 million from Pagan in his individual capacity, $10 million from Osselmann in her individual capacity, $30 million from MMVH "in their medical role and individual capacity," and $20 million from Dr. Korobkova "in her medical role." (*Id.* ¶¶ 56–64.)

## PROCEDURAL HISTORY

Plaintiff commenced this action on March 27, 2017. (ECF No. 2.) Plaintiff was granted *in forma pauperis* status on June 29, 2017. (ECF No. 11.) On April 29, 2019, defendants moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 73 & 79.) On May 12, 2020, this Court granted defendants' motions. ("May 12, 2020 Order," ECF No. 82.) Specifically, this Court dismissed with prejudice: (1) Plaintiff's claim for deliberate indifference against DOCCS and individual defendants in their official capacity; (2) Plaintiff's medical malpractice claim against Dr. Janis and MMVH; and (3) Plaintiff's ADA claim against Supt. Griffin and Osselmann. (*Id.*) The Court dismissed without prejudice for renewal: (1) Plaintiff's claim for deliberate indifference against individual defendants in their individual

---

[4] Although Plaintiff totals his damages sought to be $150 million, his Second Amended Complaint appears to only account for $140 million. (*See* SAC ¶¶ 55–66.)

5

capacity; (2) Plaintiff's medical malpractice claim against Dr. Korobkova; and (3) Plaintiff's Fourteenth Amendment claim. (*Id.*)

On July 24, 2020, Plaintiff filed a First Amended Complaint. (ECF No. 87.) Because the First Amended Complaint failed to identify certain previously named defendants, the Court granted Plaintiff leave to file a Second Amended Complaint. (ECF No. 97.) On December 13, 2020, Plaintiff filed a Second Amended Complaint ("SAC"). (ECF No. 99.) On March 24, 2021, defendants filed motions to dismiss the SAC. Defendants DOCCS, Dr. Janis, Supt. Griffin, Dr. Koenigsmann, Dr. Bernstein, Dr. Korobkova, Dr. Bentivegna, Pagan, and Osselmann (together, "State Defendants"; together with MMVH, "Defendants") move to dismiss the SAC pursuant to Rule 12(b)(6). (ECF No. 117.) Defendant MMVH moved to dismiss the SAC pursuant to Rule 12(b)(6), statute of limitations, and failure to exhaust administrative remedies. (ECF No. 109.) Plaintiff submitted a filing, dated February 22, 2021, that appears to be an opposition only to MMVH's motion. (ECF No. 120.) By letter dated March 24, 2021, State Defendants represent that they do not interpret Plaintiff's filing as a response to their motion to dismiss nor does the filing contain any arguments warranting a reply brief from them. (ECF No. 121.) MMVH filed a reply in support of its motion on March 24, 2021. (ECF No. 115.)

## LEGAL STANDARD

### I. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## II.   Section 1983

Section 1983 provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Paterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 529 F.3d 121, 127 (2d Cir. 2010). Therefore, there are two elements to a Section 1983 claim: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d. Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnished a cause of action for violation of

federal rights created by the Constitution") (citation omitted).

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). Instead, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (emphasis added) (internal quotation marks omitted), *cert. denied sub nom.*, *Brooks v. Pataki*, 137 S. Ct. 380 (2016). As the Second Circuit has explained, the personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

**DISCUSSION**

Construing the SAC liberally, Plaintiff brings the following claims against Defendants: (1) Eighth Amendment deliberate indifference claims against Dr. Janis, Dr. Bernstein, Dr. Bentivegna, Dr. Korobkova, Pagan, Dr. Koenigsmann, Supt. Griffin, and Osselmann; (2) medical malpractice claims against Dr. Janis, Dr. Bernstein, Dr. Bentivegna, Dr. Korobkova, Pagan, Dr. Koenigsmann, Supt. Griffin, and Osselmann; (3) Fourteenth Amendment procedural due process claims against Dr. Bernstein, Dr. Bentivegna, and Pagan; and (4) ADA claims against Supt. Griffin and Osselmann. Plaintiff also seeks to hold MMVH liable for Dr. Janis' alleged wrongful conduct.

### I. Eighth Amendment

Plaintiff alleges Defendants violated his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Consequently, the government is obligated to provide adequate medical care to incarcerated people, such that the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under Section 1983. *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). To state a claim of medical indifference, an inmate must show that (1) he had an objectively serious medical need, and (2) a defendant acted with subjective deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000). The defendant must have actual notice of the prisoner's serious medical need. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986). In other words, the official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he defendant's belief that his conduct poses no serious harm . . . need not be sound as long as it is sincere." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006).

There are various limits to a deliberate indifference claim. "[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Instead, to be a constitutional violation, the act or omission must result in a "condition of urgency" that may result in "degeneration" or "extreme pain." *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Koehl*, 85 F.3d at 88 (holding the court incorrectly dismissed the plaintiff's claim on a 12(b)(6) motion when plaintiff alleged he was deprived of his medically needed eye glasses resulting in a significant loss of vision); *Lowrance v. Coughlin*, 862 F. Supp 1090, 1116 (S.D.N.Y. 1994) (finding plaintiff was deprived of medical care when his knee surgery was

9

delayed due to various retaliatory prison transfers, causing pain and suffering). Thus, for example, if a prison official deliberately ignores a gash on a prisoner's face that is becoming infected, an omission of treatment could violate the Eighth Amendment; however, the failure to provide cosmetic surgery when a prisoner nicks himself shaving would not. *Chance*, 143 F.3d at 702.

An inadvertent failure to provide adequate medical care also fails to rise to the level of deliberate indifference. *See Estelle*, 429 U.S. at 105–06. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703 (internal citations omitted).

Plaintiff brings deliberate indifference claims against Defendants Dr. Janis, Dr. Bernstein, Dr. Bentivegna, Dr. Korobkova, Pagan, Dr. Koenigsmann, Supt. Griffin, and Osselmann in their individual capacities.[5] As with his initial Complaint, Plaintiff again fails to sufficiently assert in the SAC that State Defendants acted with the requisite culpable state of mind necessary to establish subjective deliberate indifference. A mere recitation of the standard does not suffice. Here, Plaintiff alleges that the State Defendants "knew of a substantial risk from the very fact that the risk was obvious." (SAC ¶ 31.) Such conclusory statement lacks any factual allegations and are insufficient to state a claim.

Plaintiff does not make any allegations in the SAC to demonstrate that Defendants had the requisite state of mind. Notably, Plaintiff alleges Dr. Janis cut into his urinary bladder during a biopsy procedure and said, "whoop I made a mistake." (*Id.* ¶ 6.) This allegation in itself demonstrates that Dr. Janis did not act with subjective deliberate indifference to Plaintiff's medical

---

[5] To the extent Plaintiff intends to bring deliberate indifference claims against State Defendants in their official capacities, these claims have been dismissed with prejudice in the May 12, 2020 Order. (ECF No. 82.)

needs.

Next, Plaintiff brings claims against Dr. Bernstein and Dr. Bentivegna for the thirty-nine-day delay in his examination by Dr. Bernstein. (*Id.* ¶ 17.) Plaintiff conclusively declares that this was a "significant delayed [sic] in treatment" and that the defendants were "fully liable," without alleging whether defendants had a role in scheduling medical appointments or that they deliberately delayed Plaintiff's appointment.

Plaintiff claims Dr. Korobkova failed to prescribe antibiotics for his yeast infection, despite Dr. Levitt's medical order. (*Id.* ¶ 18.) Dr. Korobkova instead directed Plaintiff to drink plenty of water to cure the infection. (*See id.* ¶ 20.) "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. Plaintiff does not allege he had continued or prolonged yeast infection or otherwise that he was not properly treated. Plaintiff also does not allege that Dr. Korobkova subjectively intended to not treat his yeast infection or to be different to his medical needs. Furthermore, Plaintiff alleged Dr. Korobkova denied his request for a walking cane and for a new pair of medical boots and he offensively stated that "This is prison's [sic] Mr. Bridges, not Burger King, you cannot have it your way." (*Id.* ¶ 21.) This claim also fails because Plaintiff has not alleged that he had a serious medical need for a walking cane and for medical boots.

Plaintiff alleges Pagan refused to send Plaintiff out to see medical specialists. (*Id.* ¶ 26.) However, not only does Plaintiff not allege any particular instance of this occurring, but the SAC itself also contradicts this allegation. Plaintiff alleges he saw Pagan in March 2014 due to groin pain and Pagan scheduled a medical appointment for a biopsy at MMVH. (*See id.* ¶ 3.) Accordingly, Plaintiff has not sufficiently stated a deliberate indifference claim against Pagan.

11

Further, Plaintiff brings claim against Dr. Koenigsmann for referring his letter of complaint to a subordinate who then took no corrective action. (*Id.* ¶ 31.) Plaintiff does not make any allegations regarding Dr. Koenigsmann's state of mind. Rather, Plaintiff conclusively recites the standard that defendants must have actual notice of a plaintiff's serious medical need. (*See id.* ¶ 30.)

Plaintiff brings claims against Supt. Griffin and Osselmann for denying him admission into the Unit for Physically Disabled[6] ("UPD") (*id.* ¶¶ 33–36). Plaintiff has not alleged he had a serious medical need or otherwise required 24-hour nursing care such that he qualified for admission into the UPD. Plaintiff also makes no representations regarding Supt. Griffin and Osselmann's state of mind in denying him admission.

Lastly, Plaintiff generally claims State Defendants' actions or inactions contributed to the injury caused by Dr. Janis without any elaboration. (*Id.* ¶¶ 36, 52.) These conclusory statements do not survive dismissal. Because Plaintiff has failed to amend his complaint to allege sufficient culpable state of mind, his Eighth Amendment deliberate indifference claims against State Defendants are dismissed with prejudice.

## II.     Fourteenth Amendment

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Reading the SAC liberally, Plaintiff brings Fourteenth Amendment claims against Dr. Bernstein, Dr. Bentivegna, and Pagan. Because Plaintiff is a convicted inmate, rather than a pretrial detainee, his deliberate indifference claims must be analyzed under the Cruel and Unusual Punishment Clause of the Eighth

---

[6] The SAC refers to the "UPD" without explanation. State Defendants represent that these allegations concern Plaintiff's denial of admission to the Unit for Physically Disabled, which is a housing unit devoted to inmates who require 24-hour nursing care. (State Defs. Mot. at 4, 17.)

Amendment. *Cf. Cook v. Dewitt*, No. 19 CIV. 2780 (NSR), 2022 WL 580774, at *3 (S.D.N.Y. Feb. 24, 2022) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). As discussed *supra*, Plaintiff's Eighth Amendment deliberate indifference claims against Dr. Bernstein, Dr. Bentivegna, and Pagan are dismissed.

### III.  ADA

Plaintiff reasserts claims under the ADA against Supt. Griffin and Osselmann. (SAC ¶ 33.) This Court dismissed these claims with prejudice in the May 12, 2020 Order for many reasons, including that Plaintiff's claims were not of discrimination but instead concern the quality and quantity of medical care, Plaintiff failed to assert he was entitled to receive the benefits he sought, and Plaintiff asserted claims against two individual defendants rather than a public entity. (*See* ECF No. 82 at 14–15.)  In the SAC, Plaintiff brings an ADA claim against Supt. Griffin and Osselmann alleging they denied him admission into UPD, even though Plaintiff has prostate cancer that "falls under ADA." (SAC ¶ 33.)  The conclusory statements in the SAC do not cure the defects identified by the Court. Therefore, the Court reiterates that the ADA claims against Supt. Griffin and Osselmann have been dismissed with prejudice.

### IV.  Medical Malpractice

Plaintiff appears to bring state law medical malpractice claims against Defendants Dr. Janis, Dr. Bernstein, Dr. Bentivegna, Dr. Korobkova, Pagan, Dr. Koenigsmann, Supt. Griffin, and Osselmann. (SAC ¶¶ 46, 52.)  In New York, a negligent act or omission "that constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician constitutes malpractice." *B.F. v. Reprod. Med. Assocs. of New York, LLP*, 136 A.D.3d 73, 80 (1st Dep't 2015); *Scott v. Uljanov*, 74 N.Y.2d 673, 674 (1989) ("[M]edical malpractice is simply a form of negligence, [and] no rigid analytical line separates the two").

In New York, the statute of limitations for medical malpractice is two and a half years and runs from the date of the alleged negligent act or omission that caused the patient's injury. N.Y. C.P.L.R. § 214-a. The limitations period may be extended beyond the two-and-a-half-year period under the continuous treatment doctrine, in which case the period begins to run as of the date of the last treatment. *Id.*; *Borgia v. City of New York*, 12 N.Y.2d 151, 156 (1962). To invoke the doctrine, a plaintiff must establish a continuous course of treatment with a particular health care provider with respect to the condition that gives rise to malpractice action. *Rudolph v. Jerry Lynn, D.D.S., P.C.*, 16 A.D.3d 261, 262 (2005).

As an initial matter, Plaintiff reasserts his medical malpractice claim against Dr. Janis, which was previously dismissed with prejudice by the Court in its May 12, 2020 Order as time-barred. (ECF No. 82 at 12.) The allegations in the SAC do not alter the Court's previous conclusion. Plaintiff refers to two dates on which the biopsy procedure was conducted by Dr. Janis – March 19, 2014 and April 16, 2014. (SAC ¶¶ 4, 36.) Even assuming the biopsy procedure occurred on the later date of April 16, 2014, the claims are still time-barred because Plaintiff commenced this action on March 27, 2017, more than two-and-a-half years after the biopsy. Accordingly, the Court upholds its previous ruling and reiterates that Plaintiff's medical malpractice claim against Dr. Janis has been dismissed with prejudice.

As for Plaintiff's medical malpractice claims against the other defendants, State defendants claim to have immunity under New York Correction Law Section 24. (State Defs. Mot. at 18–21.) Section 24 provides, in pertinent part: "Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state." N.Y. Correct. Law § 24(2). Since the Court dismisses Plaintiff's

federal law claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the Court finds it unnecessary to consider Defendants' immunity under the New York State Correction Law.

## V. Claims Against MMVH

Plaintiff seeks to hold the owner of MMVH, who he alleges to be the employer of Dr. Janis, liable for its employee's damages. (SAC ¶ 38.) Because the Court dismisses all of Plaintiff's claims against Dr. Janis, the Court finds it unnecessary to consider Plaintiff's arguments surrounding MMVH's liability. The SAC does not otherwise contain allegations regarding MMVH's direct involvement in any of the alleged medical procedures or treatment. Accordingly, Plaintiff's claims against MMVH are dismissed.

## VI. Leave To Amend

"The Second Circuit has instructed courts not to dismiss a complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Howard v. Brown*, No. 15-CV-09930 (ER), 2018 WL 3611986, at *6 (S.D.N.Y. July 26, 2018) (quoting *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013)). However, where "the Court has put Plaintiff on notice of the deficiencies in his original complaint and given him an opportunity to correct these deficiencies in an Amended Complaint, but Plaintiff has failed to do so, dismissal with prejudice is appropriate." *Coon v. Benson*, No. 09-CV-00230 (SCR) (LMS), 2010 WL 769226, at *4 (S.D.N.Y. Mar. 8, 2010). Here, the Court previously detailed the deficiencies in Plaintiff's original Complaint and provided *pro se* Plaintiff leave to amend. However, Plaintiff's Second Amended Complaint fails to address the same deficiencies. Therefore, *pro se* Plaintiff's claims must be dismissed with prejudice without leave to replead.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss (ECF Nos. 109 & 117) and DISMISSES *pro se* Plaintiff's Second Amended Complaint in its entirety without leave to replead. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 109 and 117, to enter judgment accordingly, and to close the case. The Clerk of Court is also directed to mail a copy of this Opinion and Order to *pro se* Plaintiff at his address listed on ECF and to show service on the docket.

Dated:   May 12, 2022  
         White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge